# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DEREK QUINN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0115-WS-C |
| | ) |
| **DEUTSCHE BANK NATIONAL** | ) |
| **TRUST COMPANY,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This closed civil action comes before the Court on *pro se* plaintiff Derek Quinn's filing styled "Motion for New Trial or to Alter, Amend or Vacate Judgment" (doc. 68).

**I.  Relevant Procedural History.**

To understand the inaccuracies and misconceptions clouding plaintiff's contention that he has been treated unfairly or unjustly in this proceeding, it is instructive to review the sequence of events that brought us to this point.

On or about August 28, 2012, Quinn (by and through retained counsel) filed a complaint in the Circuit Court of Mobile County, Alabama, against a constellation of defendants (including, among others, Deutsche Bank National Trust Company) alleging various state-law causes of action relating to the servicing of his home mortgage.  In particular, Quinn maintained that defendants had failed to accept, credit and apply his mortgage payments as they should have; that they had wrongfully determined him to be in default on his mortgage loan obligations; and that they had wrongfully initiated foreclosure proceedings.  Quinn, a law school graduate and member of the Alabama State Bar from 2001 until October 2005, was represented in these proceedings until mid-January 2014 by retained counsel of his choosing, Robert E. Rone, Esq.

On March 8, 2013, defendants removed this action to federal court, with federal subject matter jurisdiction resting on the diversity provisions of 28 U.S.C. § 1332.  On April 29, 2013, in the ordinary course of these proceedings, Magistrate Judge Cassady entered a Rule 16(b) Scheduling Order specifying, *inter alia*, that any motions to amend the pleadings must be filed

no later than July 15, 2013, and that all discovery must be completed on or before December 2, 2013. (*See* doc. 10, ¶¶ 2, 4.) The Scheduling Order cautioned the parties in bold type that requests to extend the discovery deadline "will be viewed with great disfavor and will not be considered except upon a showing (1) that extraordinary circumstances require it and (2) that the parties have diligently pursued discovery." (*Id.*, ¶ 2.) Quinn, who remained represented by Rone throughout this time period, did not move to amend the pleadings prior to the specified deadline. However, on December 2, 2013, the discovery deadline, Quinn himself filed a Motion to Enlarge Time for Discovery (doc. 36).[1] Defendants opposed this Motion. On December 11, 2013, Magistrate Judge Cassady denied the Motion to Enlarge Time for Discovery for the stated reasons that it was "defective because it was filed *pro se* while the plaintiff was represented by counsel," and Quinn had not established good cause (which would have required a showing of diligence by plaintiff) to justify modification of the Scheduling Order pursuant to Rule 16(b), Fed.R.Civ.P. (Doc. 39.) Plaintiff did not ask the Court at any time to terminate Rone as his counsel of record.

The next significant event in the case occurred on January 6, 2014, when Rone filed a Motion to Withdraw from his representation of Quinn. (*See* doc. 40.) In support of that request, Rone cited "a total breakdown in communications between Movant and the Plaintiff." (Doc. 40, ¶ 2.) Judge Cassady promptly set the Motion for hearing to be conducted on January 16, 2014, and directed that "[t]he plaintiff's attorney, Robert E. Rone, and the plaintiff, Derek Quinn, are required to appear." (Doc. 41.)

Between the time of Rone's filing the Motion to Withdraw on January 6 and the hearing on such Motion conducted on January 16, the remaining defendants filed Motions for Summary Judgment (docs. 42, 44) on January 10, 2014. The timing of these Motions was no surprise; indeed, the Scheduling Order had established a dispositive motions deadline of January 10, 2014. (Doc. 10, ¶ 12.) Because Rone was still counsel of record for Quinn, and had not yet been allowed to withdraw, defendants served copies of their motions and supporting materials on Rone, rather than on Quinn directly. This was not error and was in no way improper. On

---

[1] In that Motion, Quinn explained the *pro se* nature of this filing as follows: "The plaintiff understands that this motion should be properly filed and served by his attorney of record, however, there exists some conflicts between plaintiff and his attorney that led plaintiff to respectfully file this motion himself." (Doc. 36, at 2.)

January 13, 2014, pursuant to standard practice in this District Court, the undersigned entered a briefing schedule ordering that plaintiff's responses to the summary judgment motions were due on or before February 7, 2014 (exactly 28 days after the motions had been filed). (*See* doc. 47.)[2]

Both Quinn and Rone appeared before Magistrate Judge Cassady for a 19-minute recorded hearing on January 16, 2014. The upshot of that hearing, as Judge Cassady explained on the record that morning, was that he was granting Rone's Motion to Withdraw, and that Quinn would be expected to represent himself henceforth unless he was able to find another attorney. (*See* doc. 49.) Quinn expressly acknowledged on the record that he understood. (*See id.*) In response to Quinn's stated desire to re-open discovery, Judge Cassady asked him what additional discovery he proposed to take. Quinn was unable to articulate any specific plan.[3] On that basis, Judge Cassady told him at the hearing to "take a week, look at everything you've got, and submit to me your needs for discovery and what you intend to do, and I'll take a look at any extension of the discovery period." (Doc. 49.) Judge Cassady further directed during the hearing that Quinn "need[ed] to give me a 26(f) report that indicates how much discovery you need." (*Id.*) Judge Cassady emphasized that Quinn's report "needs to be specific" as to what additional discovery he wanted. (*Id.*) Following the hearing, on January 21, 2014, Judge Cassady entered a written Order summarizing his oral rulings from the January 16 Hearing. The January 21 Order specified, *inter alia*, that "the plaintiff will be expected to proceed with this case *pro se*" and that Judge Cassady "**ORDERS** the plaintiff to file a Supplemental Rule 26(f) Report by **January 23, 2014**. In the supplemental report, the plaintiff shall detail the remaining items of discovery needed and provide a proposed schedule for completing those items." (Doc.

---

[2] The three-day lapse between defendants' filing of Rule 56 motions and this Court's entry of a briefing schedule may be readily explained. January 10 was a Friday. Defendants filed their motions late that afternoon, as was their prerogative. The briefing schedule was entered the following Monday morning, in accordance with the standard practice of this District Court. Certainly, the 28-day response period specified by the January 13 Order was compliant with the Federal Rules of Civil Procedure's requirement of "a reasonable time to respond," Rule 56(f), Fed.R.Civ.P., and the Local Rules' requirement that summary judgment responses be filed "[w]ithin thirty (30) days …, or as may be otherwise ordered," Local Rule 7.2(b).

[3] In particular, Quinn indicated to Judge Cassady that he did not "know what's been done" in terms of discovery to date, and that he had been "totally in the dark." (Doc. 49.)

50, at 1-2.) Plaintiff had known of the January 23 deadline since the January 16 Hearing because Judge Cassady's oral directives were clear.

The January 23 deadline came and went without Quinn filing the Supplemental Rule 26(f) Report. Fully a week after the court-ordered deadline, on January 30, 2014, Quinn filed what he styled a "Motion to Reopen Discovery and Report for Rule 26(f) Conference" (doc. 53). This Motion was non-specific; to the contrary, it offered not even a glimmer of what additional discovery Quinn wished to take. Quinn's substantive discussion of additional discovery in his January 30 filing was as follows: "Plaintiff propose that more discovery is needed given that he has not been made aware of or privy to certain discovery that Plaintiff needs to properly prosecute his case." (Doc. 53, at 3.) Quinn elaborated that he "requests that he be allowed to depose at least one person of authority for the Defendants" and that "more interrogatories are needed to present a full understanding for the issues," yet he did not identify proposed areas of questioning or why he believed the existing discovery that Rone had taken was inadequate. (*Id.*) Nor did Quinn offer any proposed timetables for conducting such discovery, despite Judge Cassady's clear instructions that he include a "proposed schedule for completing those items." In short, Quinn wholly failed to comply with Judge Cassady's directives, as articulated in the January 16 Hearing and reinforced in the January 21 Order, as to the timing and content of his Supplemental Rule 26(f) Report. Not surprisingly, Judge Cassady entered an Order (doc. 54) on February 5, 2014, denying Quinn's request to reopen discovery.[4]

The CM/ECF electronic filing system maintained by this District Court transmitted an email to Quinn's address of record at 11:10 a.m. on February 5, 2014, notifying him of Judge Cassady's Order. Plaintiff has never suggested that he did not immediately receive notice of (and access to) the February 5 Order. By his own admission, however, Quinn neglected to read the February 5 Order for some time (in excess of 10 days) thereafter. In a court filing submitted on February 20, 2014, Quinn indicated that he "just read, for the first time, unfortunately, the

---

[4] That February 5 Order opined that Quinn's "motion is deficient and untimely and, as such, should be denied." (Doc. 54, at 4.) Judge Cassady further explained that "plaintiff's motion should be denied for his failure to comply with the orders of this Court," and because "the discovery plan is vague and any proposed schedule for completing additional discovery is omitted." (*Id.* at 5.) Simply put, the February 5 Order concluded, "plaintiff's motion lacks the specific details necessary for the Court to modify the scheduling order and reopen discovery." (*Id.* at 6.)

order issued by Judge Cassady on February 5, 2014." (Doc. 58, at 5.) Quinn's lack of diligence on this point was indeed unfortunate for a variety of reasons, not the least of which was that the final paragraph of the February 5 Order included an important reminder, to-wit: "The undersigned also reminds the plaintiff that the defendants' motion for summary judgment (doc. 42) remains pending … and that Judge Steele has ordered that the plaintiff must file any response to the defendants' motion by February 7, 2014 (doc. 47)." (Doc. 54, at 6.) Solely because of his own lack of diligence, plaintiff failed to read Judge Cassady's Order until long after that February 7 briefing deadline had expired.

As noted, throughout these events, the parties were laboring under the summary judgment briefing schedule entered on January 13, 2014, which ordered Quinn to respond on or before February 7, 2014. (*See* doc. 47.) February 7 passed, but Quinn filed neither a response nor a motion for extension of time; therefore, the undersigned took defendants' motions for summary judgment under submission after the briefing period lapsed. On February 13, 2014, however, some six days after the court-ordered deadline, Quinn filed a "Motion to Extend Time to File Response to Defendant Saxon Mortgage Services, Inc.'s Motion for Summary Judgment and Brief" (doc. 56). Ordinarily, requests for extension of time are routine matters and are routinely granted. Indeed, consistent with the provisions of Rule 6(b)(1), Fed.R.Civ.P., the undersigned is generally quite lenient and grants extensions of time for litigants to submit briefs in a wide variety of circumstances. As Quinn learned, however, there are limits to such lenience and accommodation. Applying Rule 6(b)(1), this Court will not grant an extension of time to a party who offers no reason or, worse, a demonstrably false reason for requesting an enlargement. The latter situation occurred here.

Quinn's Motion to Extend Time was predicated on a clearcut distortion of the truth. In particular, Quinn wrote in his February 13 filing that he had proceeded "not knowing of a summary judgment motion," complained that "no attorney or party informed Quinn that a motion for summary judgment had been filed," and indicated that "Quinn discovered this summary judgment motion … only today, being February 13, 2014." (Doc. 56, at 2.) These statements were counterfactual. During the January 16 Hearing, which Quinn attended and in which he actively participated, the pending motions for summary judgment were mentioned at least four times. For example, Judge Cassady remarked early in the hearing, "I see that summary judgment motions have been filed." (Doc. 49.) Later, he directly told Quinn that "you now have

[defendants'] information on summary judgment." (*Id.*)  In response, Quinn protested that he had never seen the summary judgment motions, but Rone interjected, "I made him a copy," and Judge Cassady pointed out that Quinn now had access to the entire court file anyway. (*Id.*) Thus, the recording of the January 16 Hearing unambiguously establishes that Quinn had actual knowledge of the pendency of defendants' summary judgment motions by no later than that date. (Quinn also was told on January 16 that he had full access to the court file, including summary judgment materials.)  Yet four weeks later, Quinn represented to this Court in writing that he had "discovered" those motions for the first time on February 13.  On the basis of this misrepresentation, the Court entered an Order (doc. 57) on February 17, 2014 denying Quinn's request for extension of time.[5]

Three days later, on February 20, 2014, Quinn filed a seven-page Motion to Reconsider (doc. 58), in which he endeavored to shift the blame for his own noncompliance with the summary judgment briefing deadline to Rone, to defense counsel, to Magistrate Judge Cassady, and to this Court.  He did not explain why his February 13 Motion represented to the Court that he was unaware of the pending summary judgment motions until that date, when the record proves otherwise.  He did not explain how, with even minimal diligence, he could not have ascertained the pendency of the summary judgment motions by perusing the docket sheet within a reasonable period of time after Judge Cassady notified him on January 16 that he was expected to proceed *pro se*.  Instead, Quinn balked that "this Court is attempting to hold Quinn to a higher standard than he is equipped" (doc. 58, at 4), asserted that this Court's rulings violated Local Rule 7.2, maintained that this Court and Judge Cassady had "created unreasonable requirements"

---

[5]   As a separate and independent ground for this ruling, the Court observed in the February 17 Order that Quinn's burden under Rule 6(b)(1)(B) was to show excusable neglect for missing the briefing deadline.  The Court opined that these circumstances could not give rise to excusable neglect, even if Quinn truthfully had been unaware of the summary judgment motions until February 13, because (i) Quinn knew as of January 16 that Rone was being allowed to withdraw and that he would have to proceed *pro se* henceforth; (ii) Quinn also knew as of January 16 that he had access to the entire court file; (iii) even the most cursory inspection of the docket sheet by one trained in the law (is Quinn is) would have revealed that the Rule 56 motions were pending and required his immediate attention; yet (iv) by his own admission, Quinn did not bother to check for any pending motions until four weeks later, on February 13. (*See* doc. 57, at 2-3.)  This sequence of events is fundamentally incompatible with the concept of "excusable neglect," which is the touchstone for relief under Rule 6(b)(1)(B).

(*id.* at 7) for him, and insinuated that he was being discriminated against as a *pro se* litigant because "a practicing attorney … most likely would have been granted that additional time" (*id.*). None of these assertions and accusations have even a shred of accuracy. Accordingly, on February 25, 2014, the undersigned entered an Order (doc. 60) denying the Motion to Reconsider.

The very next day, on February 26, 2014, Quinn filed a Motion for Leave to Amend the Pleadings (doc. 61), in which he explained that the Complaint Rone had filed on his behalf in August 2012, and which had governed these proceedings for 18 months, "was against Quinn's instructions" and that Quinn therefore wished to file a new complaint now setting forth new causes of action. (Doc. 61, at 2.) Defendants opposed this request as untimely and prejudicial. (Doc. 63.)

On March 12, 2014, this Court entered a 17-page Order (doc. 66) adjudicating both plaintiff's Motion for Leave to Amend the Pleadings and defendants' Rule 56 Motions. Before taking up the Motions for Summary Judgment, the March 12 Order examined and denied Quinn's Motion for Leave to Amend. (*See* doc. 66, at 7-10.) In so doing, the Court explained that Quinn's Motion was untimely (as it came seven months after the relevant Scheduling Order deadline), that he could not establish "good cause" under Rule 16(b)(4) simply by blaming Rone and expressing dissatisfaction with Rone's strategic choices on his behalf, and that defendants would incur undue, unfair prejudice if, after the close of discovery and after summary judgment deadlines, Quinn were permitted to interject brand-new causes of action against them now. After denying plaintiff's Motion for Leave to Amend on the merits, the March 12 Order considered and granted defendants' Rule 56 Motions, which were deemed unopposed because Quinn did not timely respond to them. (Doc. 66, at 10-17.) On that basis, the Complaint was dismissed with prejudice, and a separate Judgment (doc. 67) was entered in defendants' favor on March 13, 2014, ordering, adjudging and decreeing that Quinn was to have and take nothing on his claims and that this action was to be dismissed with prejudice.

On March 4, 2014, Quinn filed a nine-page "Motion for New Trial or to Alter, Amend or Vacate Judgment" (doc. 68) pursuant to Rule 59, Fed.R.Civ.P., with an accompanying 21-page Brief (doc. 69), in which he challenges, criticizes and seeks to relitigate literally every adverse ruling entered against him.

**II.     Rule 59 Analysis.**

   *A.     Governing Legal Standard.*

Although Quinn makes passing reference to Rule 59, his filings fail to acknowledge, address or apply the stringent standard for relief governing his Motion. A dissatisfied federal litigant is not entitled to reconsideration of anything and everything, merely because he disagrees with court rulings. To the contrary, "[i]t is hornbook law that in the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Pittman v. Alabama Dep't of Public Safety*, 2012 WL 4760864, *1 (S.D. Ala. Oct. 4, 2012) (citation and internal marks omitted). Indeed, "[t]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) (citation and internal marks omitted); *see also Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (similar). To prevail on a Rule 59(e) motion, "[t]he losing party must do more than show that a grant of the motion might have been warranted; he must demonstrate a justification for relief so compelling that the district court was required to grant the motion." *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012) (citations and internal marks omitted). Quinn makes no pretense of aligning his arguments for reconsideration to any of the discrete categories in which Rule 59(e) relief is authorized.

Authority is legion for the proposition that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (citation omitted).[6] Rule 59(e) motions do not afford an unsuccessful

---

[6] *See also Smith v. Ocwen Financial*, 2012 WL 3758378, *2 (11th Cir. Aug. 30, 2012) ("A motion for reconsideration cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment.") (citation omitted); *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (similar); *Kight v. IPD Printing & Distributing, Inc.*, 2011 WL 2015055, *1 (11th Cir. May 24, 2011) (motion for reconsideration properly denied where movant "merely attempted to relitigate old matters and presented evidence that could have been raised prior to the entry of judgment"); *Morton v. Astrue*, 2010 WL 2130613, *3 (11th Cir. May 27, 2010) ("In his motion to alter or amend judgment, … Morton merely attempted to reargue factual issues previously decided by the district court. The district court therefore did not abuse its discretion in denying the motion."); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) ("Motions to reconsider serve a (Continued)

litigant "two bites at the apple." *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985). Nor are such motions properly filed "as a kneejerk reaction by a dissatisfied federal court loser." *Lee v. Thomas*, 2012 WL 3137901, *2 (S.D. Ala. Aug. 1, 2012); *see also Thalassinos v. Adair*, 2013 WL 3231373, *2 (S.D. Ala. June 26, 2013) ("A Motion to Reconsider is not appropriately filed merely because a litigant does not agree with (or does not wish to abide by) the court's ruling."); *Hughes v. Stryker Sales Corp.*, 2010 WL 2608957, *2 (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the losing party thinks the District Court got it wrong," but finding that they are instead "an extraordinary remedy" that must be "employed sparingly") (citations omitted).[7] "They are neither appeal substitutes nor a 'dry run' to test arguments in anticipation of a forthcoming appeal." *Lee*, 2012 WL 3137901, at *2. The Court's analysis of Quinn's Motion proceeds in recognition of these principles.

### B. *Movant's Arguments as to Unfair Treatment.*

Insofar as Quinn seeks reconsideration of Judge Cassady's oral Order on January 16, 2014; his written Orders of January 21, 2014 and February 5, 2014; or this Court's written Orders of January 13, 2014, February 17, 2014, and February 25, 2014, he is largely rehashing arguments that have previously been advanced, considered and rejected. Pursuant to the foregoing authorities, a Rule 59(e) Motion is not properly framed as a "do-over" or an opportunity for a litigant to re-plow the same ground while hoping for a different result. No constructive purpose would be served by the Court reiterating the reasoning and conclusions of each of these Orders in comprehensive detail, or cutting and pasting those rulings into this Order. To the extent that Quinn seeks reconsideration of those rulings on grounds that have already

---

valuable but limited function. They do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation.").

[7] *See also Garrett v. Stanton*, 2010 WL 320492, *2 (S.D. Ala. Jan. 18, 2010) ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license … to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome. This is improper.").

been considered and rejected, his Motion is **denied** as improper and incompatible with the limited scope of Rule 59(e) review.

Nonetheless, the Court will specifically address a number of misleading or inaccurate statements in Quinn's Motion as to these issues. First, Quinn objects that this Court "ruled on the Defendants' Motions for Summary Judgments [*sic*] first, then based on that ruling, held Quinn's motion for leave to amend the complaint … to be moot." (Doc. 68, ¶ 3.) Not so. By its clear terms, the March 12 Order considered and denied the Motion for Leave to Amend the Pleadings on the merits, rather than deeming it moot. Moreover, the March 12 Order engaged in that merits analysis of the Motion for Leave to Amend prior to any consideration of defendants' Rule 56 Motions. Plaintiff's assertions to the contrary are mistaken.[8]

Second, Quinn complains that he "had little or practically no time to respond" to defendants' Motions for Summary Judgment. (Doc. 68, ¶ 2.) The facts are otherwise: Defendants filed their Rule 56 Motions on January 10, 2014, Quinn had actual knowledge of the pendency of those Motions no later than January 16, 2014, and his deadline for responding was February 7, 2014. This briefing schedule allowed for ample time, and was subject to enlargement had plaintiff ever filed a valid Rule 6(b) Motion. He did not.

Third, a recurring theme in Quinn's Motion is his contention that it was unjust or unfair to hold him accountable for what he perceives as Rone's poor lawyering.[9] Black-letter law

---

[8] The scope and breadth of plaintiff's inaccuracies on this point are breathtaking. Quinn says over and over again that this Court "den[ied] Quinn [*sic*] motion for leave to amend his complaint as moot." (Doc. 69, at 18-19.) Elsewhere, Quinn accuses the Court of "side-stepping [the Motion for Leave to Amend] then holding it as moot." (*Id.* at 19.) The Court invites Quinn to read pages 7 through 10 of the March 12 Order, which cannot possibly be construed as saying that. If he has ever read that portion of the March 12 Order, Quinn (who is, again, a lawyer by training) could not be acting in good faith in misrepresenting the contents of that Order so blatantly.

[9] For example, Quinn objects that he was held "responsible of [*sic*] all the deadlines previously agreed upon and issued on Rone" (doc. 68, ¶ 6), "argues that he should not be held liable for his former attorney's negligence" (*id.*, ¶ 18 n.3), insists that his hands were tied because "Quinn could not file anything or perform the work of an attorney while he was represented by Rone" (*id.*), contends that the ostensibly inadequate discovery performed by Rone "was outside of Quinn's control" (*id.*, ¶ 18), protests that he was "not allowed to go back into, or to correct … evidence that Quinn's former attorney failed or refused to obtain during discovery" (*id.*, ¶ 20), and so on.

conclusively defeats this argument. *See, e.g., Link v. Wabash R. Co.*, 370 U.S. 626, 633-34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004) ("the Supreme Court has said that clients are to be held accountable for the acts and omissions of their attorneys"). If as Quinn now suggests, he disagreed with Rone's strategy decisions and communications (or lack thereof) from the inception of this lawsuit, Quinn's remedy was not to sit idly by until all deadlines had passed, then cry foul and demand the right to start over from the beginning. Rather, Quinn could have terminated his relationship with Rone and either hired substitute counsel or proceeded *pro se* (relying on his own legal training and his years of experience as a practicing attorney in Alabama state and federal courts) at any time. Having elected to stay the course with Rone until after most Scheduling Order deadlines had passed, Quinn must live with the consequences of that decision.

There is also a more fundamental point that Quinn's persistent "it's-not-fair-to-punish-me-for-having-a-bad-lawyer" theme fails to appreciate. The rulings as to which Quinn seeks reconsideration do not hold him accountable for his ex-lawyer's transgressions, but for his own. Both the audio of the January 16 Hearing and the contents of the January 21 Order demonstrate that Judge Cassady was absolutely willing to reopen discovery as an accommodation for Quinn under appropriate circumstances. But Quinn effectively sabotaged himself by failing to follow Judge Cassady's oral and written directives as to both timeliness and specificity; therefore, Judge Cassady refused to allow additional discovery. Likewise, this Court would have granted Quinn's request for extension on summary judgment briefing as a routine matter had he come forward with a good (or even a shaky-but-acceptable) reason within the parameters of Rule 6(b); instead, Quinn's only asserted reason was a false one, so the motion for extension was denied. These adverse procedural rulings entered against Quinn flow solely and directly from his own acts and omissions, not those of his ex-attorney. It also bears repeating that Quinn is no ordinary *pro se* litigant. He graduated from law school. He passed the bar exam and practiced law until 2005. Quinn knew better. But even if he didn't, the inescapable fact remains that <u>every</u> *pro se* litigant

is expected to comply with court orders and procedural rules.[10]  Quinn did not, and that is why those rulings were entered against him.

Fourth, Quinn's Motion misrepresents the facts and digs the hole deeper for himself by asserting that, during the January 16 Hearing, Judge Cassady "stated that the motions for summary judgment would be held off until after Quinn's newly requested discovery was completed," and that Quinn therefore "reasonably believed that the time for responding to the motions to [*sic*] was temporarily suspended." (Doc. 68, ¶ 9.)  As an initial matter, Judge Cassady never instructed the parties that "the motions for summary judgment would be held off." Rather, as the audio of the hearing confirms, Judge Cassady said that he would consider Quinn's requests for additional discovery upon receipt of the Supplemental Rule 26(f) Report and that "we'll also consider holding the summary judgment motions until you've completed that discovery." (Doc. 49.)  Contrary to Quinn's present distortion of the record, Judge Cassady never suspended the summary judgment briefing schedules, but merely volunteered that this relief would be "considered" if additional discovery were allowed.  Of course, Quinn failed to comply with clear instructions with respect to the Supplemental Rule 26(f) Report; therefore, the additional discovery was not granted and there was no reason to "consider" staying the summary judgment briefing deadlines.  Quinn's attempt to contort the audio of the January 16 hearing into something it is not will not be countenanced or rewarded.[11]  If Quinn had any questions,

---

[10] *See, e.g., Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (explaining that "we are to give liberal construction to the pleadings of *pro se* litigants," but that "we nevertheless have required them to conform to procedural rules") (citation omitted); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (a *pro se* party "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure," and may be sanctioned "for failure to comply with court orders"); *Johnson v. Champions*, --- F. Supp.2d ----, 2014 WL 24216, *7 n.16 (S.D. Ala. Jan. 2, 2014) ("Nonetheless, even *pro se* litigants must comply with procedural rules and court orders.").

[11] Where Quinn is going with this is yet another iteration of his theory that his errors and omissions are everyone else's fault, not his own.  Remarkably, Quinn suggests that it is Judge Cassady's fault because he "did not reduce all of his instructions from the January 16, 2014 hearing to writing or a written order" (doc. 68, ¶ 10) and that it is this Court's fault for not recognizing Judge Cassady's "instructions" to suspend the summary judgment briefing.  Again, Judge Cassady did <u>not</u> suspend or stay the summary judgment briefing schedule.  Moreover, this Court listened carefully to the entire audio of the January 16 Hearing before ruling on Quinn's Motion for Extension of Time, so Quinn's suggestion that this Court relied blindly on what Judge Cassady put in writing is baseless.

hesitation or uncertainty about the status of the summary judgment motions based on Judge Cassady's words during the hearing, Quinn was free to ask for clarification during the hearing itself or in writing thereafter. He did neither.

Furthermore, Quinn's present contention that as of the January 16 Hearing, he "reasonably believed that the time for responding to the motions [for] summary judgment was temporarily suspended," unwittingly proves too much. Taken at face value, Quinn's statement shows that he appreciated that summary judgment motions had been filed, but thought he had a reprieve for responding. That contention cannot be reconciled with Quinn's statement in his Motion for Extension that he had worked until February 13 "not knowing of a summary judgment motion" and that he had "discovered this summary judgment motion" only on February 13. In trying to advance his cause in the Rule 59(e) Motion, Quinn actually makes matters worse by contradicting himself.[12]

Fifth, in his brief, Quinn insists that this Court would have granted him an extension "[h]ad the court applied the standard set forth in *Pioneer*." (Doc. 69, at 16.) Of course, the February 17 Order denying plaintiff's request for an extension of time expressly cites and applies the *Pioneer* standard in evaluating whether plaintiff has made a showing of excusable neglect. (*See* doc. 57, at 2-3.) Thus, Quinn purports to be faulting this Court for not doing something that it in fact did. And nothing in Quinn's ensuing motion to reconsider altered the *Pioneer* balance in any meaningful way, for the reasons described in the February 25 Order.

---

[12] He then doubles back on himself in his Rule 59(e) Motion by stating in a footnote, "Quinn did not know for sure that summary judgment motions were pending at the time." (Doc. 68, ¶ 7 n.2.) Yes he did. Judge Cassady had told him so during the January 16 Hearing and he admitted that he "reasonably believed the time for responding to the motions for summary judgment was temporarily suspended," which would make no sense unless he knew the summary judgment motions existed. Quinn even suggests in his Rule 59(e) Motion that he knew when the summary judgment response deadlines were, explaining that he went to the Federal Courthouse on February 13 because he "did not receive any new dates for summary judgment motions' response times" and that he "inquired about the new deadlines" (doc. 68, ¶ 12), from which it can be inferred that Quinn knew about the "old dates for summary judgment motions' response times." Indeed, Quinn makes the point of awareness of the deadlines even stronger by writing that his work on the Supplemental Rule 26(f) Report "pushed Quinn beyond the originally set deadline for response to the motions for summary judgments that were originally due by February 7, 2014, for which Quinn reasonably believed would be extended based on Judge Cassady's statements during the January 16, 2014 hearing." (Doc. 68, ¶ 11.) His Rule 59(e) Motion is thus a mass of unexplained contradictions.

Sixth, Quinn "takes exception under the rule governing the time limits, as Quinn was not allowed the proscribed [*sic*] time without the time being already encumbered by other court ordered tasks." (Doc. 69, at 17.) This marks Quinn's second attempt to argue that Local Rule 7.2 entitled him to more time to respond to the motions for summary judgment. This contention is rejected for the same reasons found on footnote 2, page 2 of the February 25 Order, which need not and will not be reproduced here. In the next breath, Quinn insists that "he has a Constitutional Right to challenge, cross-examine and defend his rights." (Doc. 69, at 17.) Quinn waived any such right when he failed to respond to the summary judgment motions prior to the court-ordered deadline. He did not have a constitutional right to defy court orders and ignore procedural requirements. He did not have a constitutional right to an extension after misrepresenting his reasons for missing a briefing deadline. He did not have a constitutional right to be free from the constraints of the Federal Rules of Civil Procedure and judicial directives managing the progress of his lawsuit. Quinn has been granted all the due process to which he is entitled, and more. Nothing in the Constitution would protect him from the natural, foreseeable consequences of his own conduct in this case.

In short, plaintiff has made no showing that might warrant reconsideration of any rulings predating the March 12 Order granting summary judgment and the March 13 Judgment terminating this lawsuit. Plaintiff's Motion for New Trial or to Alter, Amend or Vacate Judgment (doc. 68) is thus **denied** insofar as it relates to rulings other than the granting of defendants' Motions for Summary Judgment.

### C. *Movant's Arguments as to Merits of Summary Judgment.*

Plaintiff's Motion sharply criticizes this Court's handling of defendants' Motions for Summary Judgment in various respects. As a procedural matter, Quinn maintains that "this court would have been well taken and way ahead had they actually required an oral hearing before the Court to take testimony" on the Rule 56 Motions. (Doc. 68, ¶ 25.) As any practitioner in this District Court knows, the longstanding practice in the Southern District of Alabama is to rule on summary judgment motions on the papers, without conducting an evidentiary hearing or oral argument. Exceptions to this standard practice are few and far between. In this Court's discretion, nothing about defendants' Rule 56 Motions appeared to warrant the additional expense, time and effort of an evidentiary hearing or oral argument; therefore, it was certainly not error, much less manifest error as might warrant relief under Rule 59(e), for this Court not to

set the matter for hearing. *See* Local Rule 7.3 ("the court may in its discretion rule on any motion without oral argument").

Plaintiff's other dissatisfactions with this Court's handling of defendants' Motions for Summary Judgment may generally be lumped under Quinn's heading that the undersigned should have "paid more attention and performed this legal requirement" of "view[ing] the motions in light most favorable to the non-moving party" (doc. 68, at 9). This argument and all of the subsidiary arguments that clog Quinn's Motion and Brief proceed from a fundamental misunderstanding of the District Court's role in adjudicating summary judgment motions to which no response is filed. Quinn seems to be laboring under the impression that this Court was obliged to scour the record, seek out uncited facts that might favor Quinn's position, speculate about facts not in the record, and articulate Quinn's arguments and evidentiary objections for him, essentially taking up the torch for Quinn and acting as his *de facto* counsel by conjuring up a response on Quinn's behalf when Quinn himself had filed none. No such duty exists. *See, e.g., GJR Investments, Inc. v. County of Escambia Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (leniency due *pro se* litigants "does not give a court license to serve as *de facto* counsel for a party"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. … Rather, the onus is upon the parties to formulate arguments ….") (citations omitted); Rule 56(c)(3), Fed.R.Civ.P. ("[t]he court need consider only the cited materials" in the summary judgment record).

There is a more compelling defect implicit in this line of argument. Where, as here, a nonmovant does not respond to a motion for summary judgment, the Federal Rules of Civil Procedure provide that, as to any assertion of fact by the movant, "the court may … consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Rule 56(e)(2) – (3), Fed.R.Civ.P. That is precisely what this Court did. (*See* doc. 66, at 11-12.) The Eleventh Circuit has instructed that, in circumstances such as these, the Court must "ensure that the motion itself is supported by evidentiary materials." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). This Court did so, by verifying that defendants' Motions were indeed supported by evidentiary materials. It was not error – much less the kind of manifest error that might give rise

to a remedy under Rule 59(e) – for this Court not to pass judgment on the quality, credibility or quantity of defendants' supporting evidentiary materials, as plaintiff now says should have been done. In sum, defendants' facts supported by evidentiary materials were properly considered undisputed for purposes of their Rule 56 Motions because plaintiff had failed to address the assertions of fact therein as required by Rule 56(c). On the strength of those undisputed facts, defendants were entitled to summary judgment, which the March 12 Order granted them. Quinn cannot obtain Rule 59(e) relief from that ruling simply because he now says defendants' witnesses were lying, their exhibits were fictitious, and their evidence failed to include exhibits that Quinn says would have been helpful to him.

Finally, the Court observes that Quinn's Rule 59(e) Motion is telling for what it does not argue. Plaintiff does not challenge the March 12 Order's purely legal conclusion that the negligence and wantonness claims set forth in Counts Four and Five are not cognizable as a matter of Alabama law. (*See* doc. 66, at 12-14.) He does not suggest that defendants' evidence, taken at face value, does not undermine his declaratory judgment claim "that Plaintiff was never in default on his mortgage payments to Defendants, or, in the alternative, that any default by Plaintiff was caused by Defendants' error" (Complaint, at 3), thereby entitling defendants to summary judgment on Count One. Nor does he dispute the particular reasoning for the Court's granting of summary judgment to defendants on Count Two (injunction of foreclosure sale) or Count Three (demand for an accounting). Thus, he has not come close to making a showing of manifest error as to the particular legal rulings in the March 12 Order that resulted in the dismissal of his Complaint. Accordingly, his Rule 59(e) Motion is **denied** insofar as it attacks the March 12 Order granting defendants' Motions for Summary Judgment.

**III. Conclusion.**

For all of the foregoing reasons, as well as those set forth in the numerous prior orders entered in this case, plaintiff's Motion for New Trial or to Alter, Amend or Vacate Judgment (doc. 68) is **denied**.

DONE and ORDERED this 11th day of April, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE